NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANA M. HEARN,<br><br>              Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Civil Action No. 18-10538 (SDW)<br><br>**OPINION**<br><br>June 27, 2019 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Diana M. Hearn's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Douglas Alvarado's ("ALJ Alvarado" or the "ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Alvarado's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision will be **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On September 23, 2014, Plaintiff concurrently filed a Title II application for DIB, and a Title XVI application for SSI. (Administrative Record [hereinafter R.] 41, 69-70; *see also* R. 43.) In her applications, Plaintiff alleged disability as of March 2, 2014 due to multiple psychological impairments, including bipolar disorder, depression, and anxiety disorder. (*Id.*) Her application was denied initially on July 24, 2015 and on reconsideration on October 30, 2015. (R. 144, 156.) ALJ Alvarado held a hearing on July 11, 2017. (R. 39-68.) Plaintiff, who appeared with counsel, and vocational expert Rocco J. Meola ("VE Meola") testified at the hearing. (R. 44-68.) ALJ Alvarado denied Plaintiff's applications on October 16, 2017. (R. 20.)

On December 20, 2017, Plaintiff requested that the Appeals Council review the ALJ's decision. (R. 226.) Approximately two months later, Plaintiff submitted a Mental Impairment Questionnaire from her drug and alcohol counselor, Howard Schulman, dated March 9, 2016. (R. 33-38.) On April 17, 2018, the Appeals Council denied Plaintiff's request for review, making ALJ Alvarado's decision the Commissioner's final decision.[1] (R. 1-4.) Plaintiff now requests that this Court reverse the Commissioner's decision or remand for a new hearing. (Compl., ECF No. 1.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was born on September 6, 1961 and was fifty-six years old when the ALJ denied her application. (R. 45.) She is a high school graduate who has held various jobs over the years,

---

[1] In its notice to Plaintiff, the Appeals Council explained that it "found no reason . . . to review the [ALJ's] decision" and that the Mental Impairment Questionnaire did "not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (R. 1-2.)

such as bartender, server, amusement park employee, and supermarket meat wrapper. (R. 45, 52-56, 260, 273-80.) She also worked for an upholstering company cutting foam and leather for car seats. (R. 53-56.) She last worked as a file clerk for six years at her brother's distribution company but was terminated on March 2, 2014 because she made numerous mistakes due to her lack of focus, forgetfulness, and inability to complete assignments. (R. 50-53.) Plaintiff was incarcerated on at least four separate occasions for drug possession and was last released in 2008. (R. 49-50, 76, 350.)

### 2. Medical History

Plaintiff began experiencing anxiety and depression in 2000, but was first diagnosed with anxiety and bipolar disorders in 2013. (R. 110, 349, 358.) She temporarily discontinued her psychiatric treatment in late 2014 following a lapse in her insurance coverage. (R. 349, 365-66, 374.)

Plaintiff also has an extensive history of substance abuse. (R. 48, 349, 365, 373, 384.) She claims that she was sober from approximately 2005 to 2008, at which point she relapsed and used heroin until July 2013. (R. 62-63, 350.) Plaintiff reportedly maintains sobriety through methadone treatment, which she has received intermittently from 2005 to 2007, and 2014 to 2015. (R. 48-49, 349-50, 373, 415.) According to Plaintiff's medical records, she last used illicit drugs in September 2016. (R. 43-44, 48-49.)

Over the years, medical professionals have noted the impact of Plaintiff's drug use on her mental health. In February 2014, Dr. Fuad Aleskerov, D.O. indicated in his consultative report that Plaintiff's "depression/anxiety [was] aggravated by drug use." (R. 358.) Similarly, in October 2016, a licensed psychiatrist advanced practice nurse commented that Plaintiff's "long

3

term drug abuse and changed behaviors from such [were] a major barrier to treatment." (R. 379.)

On April 14, 2014, Dr. Bhaskar N. Raju, M.D. ("Dr. Raju") diagnosed Plaintiff with mood and anxiety disorder, and opiate abuse remission. (R. 385.) Despite her reported mood swings, Dr. Raju found that Plaintiff presented clear thought processes, fair insight and judgment, intact attention span, and clear orientation. (*Id.*) Dr. Raju re-examined Plaintiff on April 28, 2014, and diagnosed her with bipolar and panic disorders. (R. 387.) However, his examination notes reflect that Plaintiff did not have homicidal or suicidal ideations and that she did not present manic symptoms, pressured speech, or increased energy. (*Id.*) Rather, she exhibited a stable mood, clear thought process, fair insight and judgment, and was assessed as "improved." (*Id.*)

During a September 2014 consultation with Katherine Hanify, D.O. ("Dr. Hanify"), Plaintiff reported that she was "off the wagon, [and] would like help." (R. 353.) Dr. Hanify found that Plaintiff was otherwise well-oriented and displayed appropriate mood, affect, insight, and judgment. (*Id.*) On August 4, 2015, three clinicians in the Northwest Essex Community Healthcare Network indicated that Plaintiff possessed limited judgment and insight and that she lost her train of thought easily. (R. 365-72.)[2] However, they also found that Plaintiff had a cooperative attitude, normal speech, stable mood, and full orientation, and that her memory, thought process and associations were intact. (R. 369-70.)

### 3. Function Reports

On October 15, 2014, Plaintiff submitted a self-function report in which she stated that she struggled with anxiety, mood swings, depression, hysteria, and manic symptoms. (R. 265-

---

[2] Plaintiff was examined by Susan Chan, a licensed clinical social worker, Howard Schulman, a certified alcohol and drug counselor, and Donna Dalgetty, a medical doctor. (*Id.*)

4

73.) Plaintiff also claimed that she lacked energy and motivation, and had difficulty sleeping, focusing, and completing what she started. (R. 266-68.) She stated that she does not socialize with many people; she becomes anxious and believes that they are "out to get [her]." (R. 270.) Plaintiff reported that she cannot take public transportation or go out alone, but can drive if no one else can. (R. 46, 268.) She relies on prompting and daily reminders from her sister, Carol Manley ("Manley"), to take her medication, eat, bathe and dress. (R. 266-67, 281-83.) Manley shops for Plaintiff's groceries and brings her food almost every day. (R. 267, 282-83.)

Manley submitted a third-party function report in which she noted that Plaintiff is "anxiety-ridden," cannot focus, and lacks motivation to complete household chores. (R. 281.) However, both Plaintiff and her sister reported that Plaintiff can pay her bills, count change, handle a savings account, and use a checkbook. (R. 268, 284.)

### 4. State Agency Assessments

On July 13, 2015, Dr. Steven Yalkowsky, Ph.D. ("Dr. Yalkowsky") examined Plaintiff on behalf of Disability Determination Services and noted Plaintiff has a "long history of erratic behavior and anxiety related symptoms," as well as "depressed mood, sleep and appetite difficulties, excessive irritability, memory and concentration issues… [and] suicide attempts." (R. 351.) He diagnosed Plaintiff with bipolar and anxiety disorders and concluded that the impact stemming from her mental health issues was "moderate to severe." (*Id.*) Despite these diagnoses, Dr. Yalkowsky noted that Plaintiff was pleasant and cooperative and was able to communicate the desired information, was dressed appropriately, and presented adequate hygiene and grooming. (R. 350.) She made consistent eye contact, responded appropriately to inquiries, engaged in reciprocal interactions, and demonstrated a "logical, coherent and goal oriented" thought process. (R. 350-51.)

On July 14, 2015, Dr. Amy Brams, Ph.D. ("Dr. Brams") determined that Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and ability to adapt were either moderately or not significantly limited. (R. 75-76.) Dr. Brams further elaborated that Plaintiff could "follow simple instructions, . . . attend and concentrate, . . . keep adequate pace and persist, . . . [and] relate and adapt to routine tasks in a work situation." (R. 76.)

On October 29, 2015, Dr. Robert Starace, Ph.D. ("Dr. Starace") affirmed Dr. Bram's prior determinations. (R. 119-21.) He found that Plaintiff could "understand, remember and execute simple routine instructions/tasks; . . . sustain concentration, pace persistence for simple tasks; . . . socially interact adequately and . . . adapt to changes in a limited contact setting." (R. 121.) Additionally, Dr. Starace noted that on appeal, there was no worsening of Plaintiff's condition. (R. 114, 118, 129.)

### 5. Hearing Testimony

During her hearing before ALJ Alvarado on July 11, 2017, Plaintiff recounted the hardships she faced after being kidnapped and raped when she was nineteen years old, her tumultuous history of drug abuse, and her struggle with anxiety and depression over the years. (R. 58-62.) Plaintiff testified that she made many mistakes at work, had difficulty focusing, remembering instructions and completing tasks, which resulted in her termination. (R. 51-52.) She recounted isolating herself, frequently crying, and having difficulty socializing, completing household chores, and getting through a typical day. (R. 60-61.)

VE Meola testified that a hypothetical individual of the same age, and with the same education and work history as Plaintiff, who "has no exertional limitations but is able to understand, remember, and carry out simple instructions with only occasional changes to

6

essential job functions, is able to make simple work-related decisions, can occasionally interact with supervisors, coworkers, and the public[,]" would be able to perform Plaintiff's past work as a hand cutter. (R. 63-67.) The VE also determined that such an individual would be able to perform other work that exists in abundance in the national economy such as labeler, inspector packer, and bagger. (R. 66.)

## II.     **LEGAL STANDARD**

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607,

620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind

of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-

9

28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§

404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.     DISCUSSION

In his decision dated October 16, 2017, ALJ Alvarado properly applied the five-step disability test before determining that Plaintiff was not disabled. (R. 11-20.) At step one, the ALJ determined that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. 13.) At step two, the ALJ found that Plaintiff's bipolar disorder, depression, anxiety disorder and substance abuse disorder were severe impairments because they significantly limited Plaintiff's mental ability to perform basic work activities. (*Id.*) At step three, however, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listings 12.04 or 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] (R. 14-15.) Before undergoing the analysis in step four, ALJ Alvarado calculated Plaintiff's RFC and concluded that she could

> perform a full range of work at all exertional levels but with the
> following non-exertional limitations: she is able to understand,

---

[3] Listing 12.04 relates to depressive, bipolar and related disorders, and Listing 12.06 concerns anxiety and obsessive-compulsive disorders.

11

> remember and carry out simple instructions with only occasional changes to essential job functions; make simple work-related decisions; occasionally interact with supervisors, coworkers and the public; and work in an environment where productivity is judged at the end of the day rather than the middle of the day.

(R. 15.) The ALJ evaluated hearing testimony, function reports, and medical records to conclude that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and liming effects of her symptoms were not entirely consistent with the objective medical evidence. (R. 15-18.) In light of Plaintiff's RFC, at step four, ALJ Alvardo found that Plaintiff could perform her past relevant work as a hand cutter. (R. 18-19.) Because Plaintiff had only worked as a hand cutter for a short period of time, the ALJ proceeded to the next step of the disability analysis. At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and concluded that Plaintiff was not disabled because she was "capable of making a successful adjustment to other work that exist[s] in significant numbers in the national economy." (R. 19.) In reaching this determination, ALJ Alvarado relied on VE Meola's testimony that Plaintiff could work as a labeler, inspector packer, and bagger. (R. 18-19, 64-66); *see also* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).

On appeal, Plaintiff argues that: (1) the ALJ erred in concluding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; and (2) the ALJ's finding that there are jobs in the national economy that Plaintiff could perform was not supported by substantial evidence. (Pl.'s Moving Br. at 10-20.) This Court considers these arguments in turn and finds them each without merit.

With respect to her first argument, Plaintiff takes issue with the ALJ's finding that her mental functioning limitations were categorized as "moderate" as opposed to "extreme" or

12

"marked." (Pl.'s Moving Br. at 12-14.) Other than referencing Dr. Yalkowsky's consultative exam, which noted his belief that the impact of Plaintiff's mental health issues was "moderate to severe," (*id.* at 13), Plaintiff primarily relies on reports of her subjective complaints to assert that her limitations were more severe.[4] (*Id.*) This Court will not re-weigh the evidence or engage in a *de novo* review of the Commissioner's determinations. *See Davis v. Comm'r of Soc. Sec.*, No. 17-9424, 2019 WL 449200, at *3 (D.N.J. Feb. 5, 2019). ALJ Alvarado's decision provided a nearly exhaustive discussion of the record evidence and sufficiently explained why greater weight was given to the opinions of the two state agency experts. (R. 15-18.) Indeed, the state agency psychologists, Drs. Brams and Starace, independently determined that Plaintiff was not precluded from working despite her psychological impairments. (R. 64-108, 109-40.) Specifically, Dr. Brams opined that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions, interact appropriately with the general public, deal with supervisors, get along with co-workers, and maintain socially appropriate behavior, and that Plaintiff had no limitations with asking simple questions or requesting assistance. (R. 94-95.) Dr. Starace largely affirmed Dr. Bram's findings. (R. 118, 120-21.) ALJ Alvarado also thoroughly evaluated the subjective function reports but ultimately determined that they were inconsistent with the objective medical evidence in the record and that Plaintiff's sister lacked professional training to assess Plaintiff's impairments. (R. 15-17.) Based on the foregoing, ALJ Alvarado's assessment of Plaintiff's psychological impairments is supported by substantial credible evidence.

---

[4] This Court notes that Plaintiff's reliance on Harold Schulman's Mental Impairment Questionnaire is misplaced. First, Plaintiff fails to demonstrate good cause as to why the report was not submitted prior to her administrative hearing before ALJ Alvarado, or otherwise explain how the newly submitted evidence would have changed the outcome of the ALJ's determination. (R. 25, 33-38.) Second, even if the questionnaire was properly before this Court, Mr. Schulman's report indicates that Plaintiff is a "malingerer" and that the limitations noted were "according to client[.]" (R. 35-36, 38.)

13

With respect to Plaintiff's second point, this Court finds that ALJ Alvarado properly relied on VE Meola's testimony to conclude that Plaintiff was able to perform jobs that exist in the national economy. (R. 18-19, 63-67); *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). After considering the vocational expert's testimony, which ALJ Alvarado found was consistent with the Dictionary of Occupational Titles (the "DOT"), the ALJ concluded that Plaintiff could perform her past job as a hand cutter and would also be able to perform nationally available jobs, such as labeler, inspector packer, and bagger.[5] (R. 18-19, 64, 66.) Plaintiff argues that the other hypothetical limitations discussed during the hearing, namely needing to be "off-task 15% or more of the workday[,]" "absent from work two or more days per month," and/or "need[ing] frequent reminders to remain on-task[,]" are more representative of her own issues. (Pl.'s Moving Br. 16-17; *see also* R. 66-67.) However, Plaintiff does not point to objective evidence in the record to support her conclusory claim.[6] Similarly, Plaintiff broadly argues that "ALJ Alvarado failed to include all of [Plaintiff's] limitations in any of her [sic] hypotheticals" without clarifying what VE Meola should have been asked during the hearing. (Pl.'s Moving Br. 17.) Importantly, Plaintiff was represented during the administrative hearing and her attorney declined to ask the vocational expert any questions. (R. 67); *see also Keveanos v. Berryhill*, No. 18-3421, 2019 WL 1500624, at *8 n.9 (D.N.J. Apr. 5, 2019) ("When an applicant for social security benefits is represented by counsel, the ALJ 'is entitled to assume that he is making his strongest case for benefits.") (quoting *Batts v. Barnhart*, No. 01-507, 2002 WL

---

[5] Though Plaintiff argues the Occupational Information Network (the "O*NET") has superseded the DOT, (Pl.'s Moving Br. 18), the Code of Federal Regulations specifically lists the DOT as a source of "reliable job information[.]" 20 C.F.R. § 404.1566(d). "It is not for this Court to reform the methodology that SSA [vocational experts] use to determine available and appropriate jobs in the national economy that match a claimant's RFC." *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 16-05691, 2017 WL 4316880, at *9 (D.N.J. Sept. 28, 2017); *see also Junod v. Berryhill*, No. 17-1498, 2018 WL 5792214, at *4 (W.D. Pa. Nov. 5, 2018) (finding that the "ALJ properly relied on the [vocational expert's] testimony to the extent that it was based upon DOT data" rather than the O*NET).
[6] Even if she did, courts have explained, "the ALJ need only include in the RFC those limitations which he finds credible." *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008) (citations omitted).

14

32345745, at *8 (E.D. Pa. Mar. 29, 2002)). Based on the foregoing, it is clear that ALJ Alvarado calculated Plaintiff's RFC based on those limitations that he found to be credible, and properly relied on VE Meola's testimony in concluding that Plaintiff was able to return to her past work or find new work. There is no basis for reversal or remand.

## IV. CONCLUSION

This Court finds that ALJ Alvarado's factual findings were supported by substantial credible evidence in the record. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk  
cc: Parties